1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  KAREN BEAUSEY (CABN 155258)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6598
7       FAX: (415) 436-7234
        Karen.Beausey@usdoj.gov
8
   Attorneys for Plaintiff
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                     SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,              )   CASE NO.
                                           )
14          Plaintiff,                     )
                                           )
15      v.                                 )   **VERIFIED COMPLAINT FOR FORFEITURE**
                                           )                  ***IN REM***
16  $215,665 in United States Currency,    )
                                           )
17          Defendant.                     )
    _____)
18

19
         The United States of America, by its attorneys, David L. Anderson, United States Attorney, and
20
    Karen Beausey, Assistant United States Attorney for the Northern District of California, brings this
21
    complaint and alleges as follows:
22

23                          **NATURE OF THE ACTION**

24       1.      This is a judicial forfeiture action, as authorized by Title 21, United States Code, Section

25  §§ 853 and 881(a)(6), involving the seizure and forfeiture to the use and benefit of the United States of

26  America the following property:

27       $215,665 in United States Currency seized by law enforcement officers from the United States

28

                                          1

mail on or about September 1, 2020, and currently in the custody of the Drug Enforcement Administration ("DEA");

(hereinafter, "Defendant Property"), as property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of a violation of 21 U.S.C. §§ 841 and/or 846, and thereby forfeitable pursuant to 21 U.S.C. § 881(a)(6).

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881(a)(6).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395 because the acts or omissions giving rise to the forfeiture occurred in this district and the Defendant Property is located in this district.

4.      Intra-district venue is proper in the San Francisco within the Northern District of California.

## PARTIES

5.      Plaintiff is the United States of America.

6.      The Defendant Property consists of $215,665 in United States Currency seized by law enforcement officers from the United States mail on or about September 1, 2020, and currently in the custody of the DEA.

## FACTS

7.      On September 1, 2020, at approximately 8:26 a.m., Cincinnati DEA Task Force Officer ("TFO") Eli Sautter received information from a confidential source (CS) that on August 31, 2020, Cameron BARNES made a one-way airline reservation to fly from Chicago to San Francisco International Airport (SFO) on September 1, 2020 (the next day), via American Airlines Flight #2639. BARNES had not purchased a return flight.  BARNES' ticket cost $318.00, and was purchased with a credit card with an associated address of 703 36th Street, Niles, Michigan 49120.  A check of public

records revealed that BARNES is not listed as living at that address, but rather has a listed address of 3130 South 13th Street, Niles, Michigan 49120.

8.    TFO Sautter provided Cameron BARNES' date of birth as April 16, 1990, and advised that BARNES had no checked luggage.

9.    TFO Sautter forwarded all pertinent information relating to Cameron BARNES' reservation to San Francisco DEA Task Force #2 at SFO.

10.   Agents conducted computer inquiries of BARNES with the information provided relating to his reservation.  DEA TFO Maes examined BARNES' criminal history report and learned that BARNES had a total of 19 arrests between 2008 and 2019, which included 13 narcotics related arrests in four different states (California, Michigan, Louisiana, and Indiana).  BARNES' has a total of seven narcotics-related convictions, including two from California, three from Indiana, and two from Louisiana.  TFO Maes also learned that BARNES was on probation until December 5, 2021, relating to an arrest for possession with the intent to distribute marijuana and MDMA in Louisiana.

11.   TFO Maes also learned that BARNES might be traveling with an associate named Terrence Smith (DOB: May 17, 1989).  TFO Maes learned that Terrence Smith also had a reservation aboard American Airlines flight #2639 to SFO on September 1, 2020.  Smith's reservation had been made on August 30, 2020 (the day before BARNES' reservation was made) and the purchaser also paid $318.00 with a credit card.  Smith's reservation had an associated address of 7809 South 13th Street, Niles, MI 49120, the same street as BARNES' listed address.  A criminal history check did not reveal any criminal history for Terrence Smith.  TFO Maes later learned that both BARNES and Smith checked-in for flight #2639 in Chicago, but Smith missed the flight.  BARNES had no checked luggage but Smith checked in one piece of luggage that bore American Airlines baggage claim number 8001956716.

12.   TFO Maes has been a law enforcement officer since 1994 and a DEA Task Force Officer

since 2002.  During that time, he has investigated hundreds of narcotics trafficking violations, and has become familiar with common behaviors, tricks, and practices of individuals who travel to San Francisco to obtain illegal drugs.  In TFO Maes' training and experience, he knew that most travelers attempt to book airline travel at least two weeks in advance of the flight date, and purchase round trip tickets, in order to receive the lowest possible fare.  On the other hand, TFO Maes knows that California is a source state for narcotics, and in his experience individuals who fly to San Francisco with the intention of purchasing illegal drugs frequently make their airline reservations shortly before the date of travel, and frequently purchase one-way tickets to make it difficult for law enforcement to determine when or how they intend to return to their city of origin.

13.     Agents were able to obtain a photo of BARNES prior to the arrival of American Airlines flight #2639.

14.     In light of the information related to them by TFO Sautter and what they viewed as the suspicious nature of BARNES' and Smith's travel, San Francisco Task Force #2 officers decided to meet BARNES and Smith at SFO and to seek an interview with either or both of them regarding the purpose of their travel to California.

15.     Accordingly, on September 1, 2020, at approximately 4:15 p.m., agents went to the area of the American Airlines gate in anticipation of BARNES' arrival on flight #2639.  The flight arrived at approximately 4:30 p.m., and passengers started to exit the jet way at the gate.  At approximately 4:35 p.m., TFO Maes and DEA Special Agent Michael Vo observed an individual fitting the physical description of Cameron BARNES exit the jet way alone.  BARNES was observed carrying a "Nike" backpack and pulling a small black roller suitcase.  Agents followed BARNES as he walked away from the gate and into a men's restroom.  After exiting the restroom, BARNES walked towards the exit of the terminal and towards American Airlines baggage carousel #5.

16.     At approximately 4:42 p.m., agents observed BARNES standing at baggage carousel #5

4

alone, apparently waiting to retrieve checked-in luggage.  This struck the agents as unusual because they knew BARNES had not checked any luggage.  At approximately 4:45 p.m., TFO Maes and SA Vo observed BARNES retrieve one large black canvas "Ricardo" suitcase from baggage carousel #5. Agents observed BARNES closely examine the baggage claim tag attached to the suitcase.  BARNES then started to walk towards the exit of the terminal alone, in possession of the suitcase he had just retrieved from baggage carousel #5 and the Nike backpack and small roller suitcase he brought with him when he deplaned.

17.    As BARNES was walking towards the exit of the terminal, TFO Maes called out his name, "Cameron BARNES."  BARNES immediately paused and turned towards TFO Maes' voice. TFO Maes and SA Vo approached BARNES.  TFO Maes and SA Vo were wearing plain clothes, not law enforcement uniforms.  TFO Maes and SA Vo identified themselves to BARNES as a law enforcement officers and presented him with their issued identifications.  In a conversational tone of voice, TFO Maes advised BARNES that he was not under arrest and that he was free to go at any time. TFO Maes asked BARNES, "Can I talk to you?"  BARNES immediately said "yes."  TFO Maes indicated the "Ricardo" bag BARNES had retrieved from the baggage carousel and asked BARNES, "is that your suitcases?" BARNES replied, "No, it's my cousins, he missed the flight and wanted me to pick it up."  SA Vo examined the baggage claim tag that was attached to the suitcase and it was in the name of "Terrence Smith" and bore American Airlines baggage claim number 8001956716.

18.    TFO Maes asked BARNES, "are you in San Francisco for business or pleasure?" BARNES stated, "pleasure, I'm visiting family in Sacramento."  TFO Maes asked, "how long do you plan on staying in the area?"  BARNES stated, "a while."  TFO Maes then asked BARNES if he had any identification.  BARNES stated he did and pulled out his wallet.  While BARNES was searching through his wallet for his identification, TFO Maes observed BARNES hands visibly shaking, as if BARNES was nervous.  BARNES dropped several credit cards onto the floor while searching for his

identification.  BARNES provided TFO Maes with a Michigan driver's license in the name of "Cameron

Juard BARNES," with a date of birth of April 16, 1990.  TFO Maes quickly returned BARNES' driver's

license.  TFO Maes asked BARNES if he had ever been arrested.  BARNES initially said, "no," which

TFO Maes knew was not true.  BARNES then changed his mind and admitted to having been previously

arrested.  TFO Maes asked BARNES if he was currently on probation relating to a narcotics related

arrest.  BARNES denied being on probation, stating, "I'm not on probation for that, I don't have to

report."  TFO Maes asked BARNES if he was currently in possession of any illegal narcotics.  BARNES

immediately stated he was not.  TFO Maes asked BARNES, "Can we search your suitcases and back

pack to confirm that you are not in possession of any illegal narcotics?"  BARNES immediately stated,

"yes."  TFO Maes and SA Vo then searched BARNES' backpack and the small roller suitcase he

brought when him when he deplaned, and no illegal contraband or large sums of U.S. Currency were

located within the either item.

19.     During the search of the large canvas "Ricardo" suitcase BARNES had retrieved from

baggage carousel #5 (bearing American Airlines baggage claim tag number 8001956716 in the name of

Terrence Smith), SA Vo immediately observed the suitcase contained numerous rubber-banded bundles

of a very large amount of U.S. Currency.  The currency consisted of numerous denominations, which

TFO Maes knows is an indicator of street level narcotics trafficking.  The currency was wrapped in

clothing, inside of pants pockets, inside of a shoe box, and loosely placed within the suitcase.  In his

training and experience, TFO Maes recognized the manner in which the currency was packed as

consistent with narcotics smuggling.  Specifically, the bundling of the money in rubber-banded stacks,

the multiple denominations indicative of street level narcotics trafficking, and the concealment of the

money within clothing and other innocuous-looking items (such as the shoe box), were methods of

transporting money that TFO Maes had observed used by narcotics traffickers in other investigations on

which he had worked.

20.     TFO Maes asked BARNES how much money was in the suitcase, and BARNES stated, "I don't know, it's my cousins."  TFO Maes asked for contact info for BARNES' cousin, but BARNES refused to provide TFO Maes with a telephone number or address relating to his cousin.  BARNES later advised TFO Maes that he (BARNES) is a rapper and stated that the currency located within Smith's suitcase was going to be used during the filming of a rap video.  When TFO Maes asked for more details about the filming of the video, BARNES refused to provide any specific details relating to the video's production.  TFO Maes asked BARNES about his current finances, but BARNES stated, "I don't like talking to the police," and the interview was completed.

21.     TFO Maes found the transportation of such a large amount of cash in order to pay to produce a video to be suspicious.  There are numerous branches of numerous banks in the Bay Area and in the Sacramento area, and BARNES (and/or Smith) could just as easily – and far more safely – have withdrawn any cash he needed from a California branch rather than risk losing such a large amount of cash (or having it stolen) by transporting it from Chicago in checked luggage.  In his training and experience TFO Maes knows it is highly unusually for legitimate tourists or business visitors to travel with large amounts of cash, and that they (like most people in their daily lives) generally prefer to use credit cards and other forms of electronic payment, particularly for more expensive payments.  He further knows that individuals involved in the purchase and/or sale of controlled substances frequently bring large amounts of cash when traveling to California to purchase controlled substances or to pay for previously-purchased controlled substances, and that individuals who sell controlled substances usually prefer to be paid in cash to avoid creating a paper trail.

22.     TFO Maes advised BARNES that the cash going to be detained based on the totality of the circumstances, as he suspected the money was brought to California with the intent to purchase drugs or was the proceeds of a drug transaction.  BARNES did not protest the seizure and did not provide any further explanation for the presence of such a large sum of U.S. Currency in the suitcase.

23.     The seized currency (the Defendant Property) was sealed into DEA evidence bag #EL00136045 by TFO Maes as witnessed by BARNES and SA Vo.  BARNES provided his contact information on a DEA-12 (receipt for seizure of cash) as 3130 South 13th Street, Niles, MI 49120 (the same as his listed address), and provided a phone number of 574-387-9136.  BARNES signed the DEA self-sealing evidence bag #EL00136045 as the owner/possessor of the currency detained in the investigation.  TFO Maes provided BARNES with a copy of the DEA-12 relating to the seizure.  The consensual interview and search of BARNES' luggage was completed at approximately 4:56 p.m.

24.     Task Force Officer Victor P. Bertolozzi maintained complete care and custody of the detained currency, as witnessed by TFO Maes.  TFO Bertolozzi transported the currency to TF#2, as witnessed by TFO Maes.  No arrests were made.  BARNES did not provide any attorney information to TFO Maes.

25.     Recognizing that it might become necessary to have a narcotics canine examine an item during the encounter with BARNES, on September 1, 2020, at approximately 12:30 p.m., Task Force Officer Ariana D. Daggett had her certified narcotics canine "Ryker" conduct a search of the area near pole B-92 in terminal #3, where any suspected packages or drug proceeds would be later placed for examination.  TFO Daggett advised TFO Maes that her canine did not alert to the odor of narcotics in that area.  At approximately 5:05 p.m., TFO Maes placed the Defendant Property (which was contained within DEA evidence bag #EL00136045) in a fire extinguisher locker near pole B-92 in terminal #3 (within the area previously searched by TFO Daggett and Ryker).  At approximately 5:07 p.m., TFO Daggett had Ryker conduct a systematic search of the area where numerous other items were located, including the Defendant Property.  At approximately 5:07 p.m., Ryker alerted to the fire extinguisher locker which contained the Defendant Property by standing and staring at the fire extinguisher locker near pole B-92. This is an indication to TFO Daggett that the odor of narcotics was emanating from the Defendant Property.

26.     On September 2, 2020, at approximately 10:45 a.m., TFO Maes and TFO Daggett transported the Defendant Property (still sealed in the evidence bag) to the Bank of America located at 555 Broadway, Millbrae, California, for processing.  Once there, the currency was counted and determined to be $215,655.00 U.S. Currency.  The currency was subsequently converted into cashier's check #0858916246, made payable to the U.S Marshal Service in the amount of $215,655.00 U.S. Currency.

27.     An examination of employment records in Michigan (BARNES' alleged state of residence) and Indiana (where he received five different narcotics related arrests) did not return any information relating to current employment for BARNES.

28.     On September 24, 2020, TFO Maes learned that the home address provided by BARNES (3130 South 13th Street, Niles, MI 49120) was linked to a December 2015 United States Postal Service seizure of 5,216.31 grams of marijuana.  The listed sender of the parcel was "Fit 4 A King Clothing" at 6311 Padua Court, Bakersfield, CA 93308, and the listed recipient was "Martin Rogers" at BARNES' address.  In February 2019, a second United States Postal Service investigation associated with BARNES's addresss led to the seizure of 249 grams of marijuana.  That parcel listed the sender as "Envision Apparal Solution" at 444455 Fruitland Avenue, Vernon CA, and the listed recipient as "T. Cooley" at BARNES' address.  TFO Maes also learned that a USPS login account was established associated with BARNES' address and a telephone number of 574-387-9136 – the same telephone number provided by BARNES to TFO Maes.  The last time that account was accessed was April 6, 2017, indicating to TFO Maes that BARNES has had that telephone number since at least 2017.

29.     On September 22, 2020, TFO Maes was contacted by Det. James Baumgartner of Elkhart County, Indiana, regarding their ongoing investigation of an individual named Toby Jones for marijuana trafficking.  According to Det. Baumgartner, a search warrant was executed at 346 West Hubbard Avenue, Elkhart, IN, the residence of Toby Jones.  During execution of the warrant, 88 pounds of

marijuana, multiple firearms, and $139,054 U.S. Currency was located and seized. Det. Baumgartner also seized Jones' cellular telephone and obtained a search warrant to examine its contents. Analysis of the contents revealed numerous communications and photos depicting marijuana between Jones' telephone and BARNES' telephone. In addition, a total of 23 incoming and outgoing communications between BARNES and Jones between September 14, 2020 (two weeks after the seizure of the Defendant Property) and October 13, 2020.

30.   Det. Baumgartner also observed a photograph on Jones' phone of what appeared to be a license in the name of "Terrance Smith" but bearing BARNES' photograph. TFO Maes believes that BARNES posed as Smith to check the "Ricardo" suitcase with American Airlines prior to boarding the flight under his own identity, and that "Terrance Smith" and BARNES are one and the same.

31.   The DEA timely initiated administrative forfeiture proceedings against the Defendant Property. On October 26, 2020, DEA received a timely claim for the Defendant Property from BARNES. Pursuant to 18 U.S.C. § 983(a)(3)(A) the United States thereafter had ninety (90) days within which to initiate judicial forfeiture proceedings. The instant complaint is filed within that 90-day time limit.

## CLAIM FOR RELIEF

1.   The United States incorporates by reference the allegations in paragraphs 1 through 31 as though fully set forth herein.

2.   Title 21, United States Code, Section 841(a) prohibits the manufacture, distribution, or dispensing, and possession with the intent to distribute a controlled substance.

3.   Title 21, United States Code, Section 846 makes it a crime to attempt or to conspire to violate Title 21, United States Code, Chapter 13, Subchapter I, including Title 21, United States Code, Sections 841(a).

4.   Title 21, United States Code, Section 853 provides that any person convicted of violating

(among other things) Title 21, United States Code, Sections 841(a) and 846 shall forfeit any property constituting or derived from any proceeds the person obtained, directly or indirectly, as the result of that violation, and any of the person's property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of that offense.

5.      Title 21, United States Code, Section 881(a)(6), provides, in part, for the forfeiture of all moneys, securities or other things of value furnished or intended to be furnished to a person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys and securities used or intended to be used to facilitate any violation of Title 21, United States Code, Chapter 13, Subchapter I, including violations of Title 21, United States Code, Sections 841(a) and 846.

6.      In light of the foregoing, and considering the totality of the circumstances, there is probable cause to believe that the Defendant Property represents proceeds traceable to money, securities or other things of value furnished to a person in exchange for a controlled substance, or intended to do so, in violation of Title 21, United States Code, Sections 841(a) and 846, and thus subject to forfeiture under Title 21, United States Code, Sections 853 and 881(a)(6).

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of the Defendant Property; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; and that judgment of forfeiture be entered; that the Court enter judgment forfeiting the Defendant Property; and that the United States be awarded such other relief as may be proper and just.

DATED: January 22, 2021                    Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

Karen D. Beausey
Assistant United States Attorney

1
2

## VERIFICATION

3       I, Drug Enforcement Administration Task Force Agent Steve Maes, state as follows:

4       1.      I am a Task Force Agent with the Drug Enforcement Administration. I am a case agent
5
assigned to this case. As such, I am familiar with the facts and the investigation leading to the filing of
6
this Complaint for Forfeiture.
7
8       2.      I have read the Complaint and believe the allegations contained therein to be true.
9                                *       *       *       *       *

10      I declare under penalty of perjury that the foregoing is true and correct. Executed this _22_
11  day of January, 2021, in _SAN FRANCISCO_, California.
12
13
14                                              _____
                                                Task Force Officer Steve Maes
15                                              Drug Enforcement Administration
16
17
18
19
20
21
22
23
24
25
26
27
28

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1 ☐ U.S. Government Plaintiff
2 ☐ U.S. Government Defendant

3 ☐ Federal Question
*(U.S. Government Not a Party)*

4 ☐ Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 151 Medicare Act | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| of Veteran's Benefits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 160 Stockholders' Suits | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 862 Black Lung (923) | 490 Cable/Sat TV |
| 190 Other Contract | | | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | 864 SSID Title XVI | 890 Other Statutory Actions |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | 865 RSI (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

1 ☐ Original Proceeding
2 ☐ Removed from State Court
3 ☐ Remanded from Appellate Court
4 ☐ Reinstated or Reopened
5 ☐ Transferred from Another District *(specify)*
6 ☐ Multidistrict Litigation–Transfer
8 ☐ Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions):*

JUDGE

DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

**(Place an "X" in One Box Only)**   ☐ **SAN FRANCISCO/OAKLAND**   ☐ **SAN JOSE**   ☐ **EUREKA-MCKINLEYVILLE**

**DATE**

**SIGNATURE OF ATTORNEY OF RECORD**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

II. **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

(1) <u>United States plaintiff</u>. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

(2) <u>United States defendant</u>. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

(3) <u>Federal question</u>. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

(4) <u>Diversity of citizenship</u>. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.

(1) <u>Original Proceedings</u>. Cases originating in the United States district courts.

(2) <u>Removed from State Court</u>. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

(3) <u>Remanded from Appellate Court</u>. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

(4) <u>Reinstated or Reopened</u>. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

(5) <u>Transferred from Another District</u>. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(6) <u>Multidistrict Litigation Transfer</u>. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

(8) <u>Multidistrict Litigation Direct File</u>. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

<u>Please note that there is no Origin Code 7</u>. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

<u>Demand</u>. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

<u>Jury Demand</u>. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

IX. **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.